Barney, J.,
delivered the opinion of the court:
The defendants have demurred to the petition in this Case, and the issue raised thereby is before the court for decision.
The averments in the petition are substantially as follows: The plaintiff is the owner in fee simple and entitled to the possession, and until deprived thereof by the defendants was in the actual possession of a certain tract of land in the State of Nevada upon which was situated a soda lake. This lake is located in an extinct volcano crater, and is normally nearly dry except in small depressions. The water in one of these depressions is very saline, owing to an alkali spring arising therein, which has been pumped out by the plaintiff into depressions or vats situated near the margin of the lake, which *425 after natural evaporation left a deposit of crude sodium carbonate, which was gathered by the plaintiff and sold, yiélding it considerable revenue and profit; and that said lake is valuable only as a source of supply of said sodium carbonate. The land surrounding the lake and in the whole vicinity is exceedingly dry and porous, the annual rainfall in that district being only about 5 inches.
The defendants, by lawful authority given for that purpose, have constructed an irrigation system in "the vicinity of said lake, and in pursuance thereof and to convey water have dug ditches and canals which are adjacent to said lake and the improvements of the plaintiff, being something less than a mile from the same. As a consequent, a part of the waters from said canals and ditches have soaked or seeped through the soil into said lake (which is located considerably lower in altitude than the bottom of the canals and ditches) and has submerged the depressions before mentioned and the vats and other improvements of the plaintiff constructed for use and used in connection with the gathering of said sodium carbonate, and thereby rendered the same useless and totally destroying the said business of the plaintiff. This condition began soon after the water was turned into said canals and ditches and has continued ever since.
The only question for consideration in this case is whether the facts as stated constitute a “ taking ” within the meaning of the fifth amendment of the Constitution.
Upon the oral argument in this court the defendants’ counsel admitted that the facts as alleged state a cause of action within the case of Lynah v. United States (188 U. S., 445), except that it was contended that, as the injuries complained of were not open, visible, and notorious, there should be an allegation and proof that the destruction resulting from the water conveyed in* said canals and ditches was reasonably to have been anticipated; and that if not the damages would be only consequential, and for which, of course, the defendants would not be liable. In other words, that in this class of cases scienter must be alleged and proven unless the facts as stated show an open, visible, and notorious taking as distinguished from a taking resulting from conditions which perhaps were not anticipated or fully understood.
*426 It appears to the court that counsel makes the mistake of confounding the taking of property with the means by which it is taken. The taking may be by the action of causes which were not anticipated; it may not have been intended or contemplated. but after the cause has acted and the unexpected taking has been accomplished it is as open, notorious, and visible as though it was the result of intention.
Consequential damages are such as are naturally produced but by indirection; that is, the damage is not the direct and proximate result of the cause. We know of no cases, however, which hold that the anticipation, knowledge, or want of knowledge of the actor has anything to do with the question of whether the resulting damage was direct and proximate or not. In suits against the Government for the taking of property under the fifth amendment to the Constitution the question is whether the property has been taken or not. and not how it has been taken. If land has been submerged by water flowing or seeping under the surface of the ground, it has been taken just as effectually as though it had been submerged by water flowing above the surface. Whether the damage caused by a flying missile is direct or consequential does not depend upon whether it passed unseen in the night or in broad daylight. It would be a travesty upon justice for the Government to effectually take property from one of its citizens and then plead the small boy’s defense, “ that it didn’t mean to.”
The Supreme Court said in Lynah v. United States (supra):
“ It is clear from these authorities that when the Government, by the construction of a dam or other public works, so floods lands belonging to an individual as to substantially destroy their value, there is a taking within the scope of the fifth amendment.” (Ibid., 470.)
There is nothing said as to how this flooding is to be done or as to whether it is to be intentional or not. In fact, in that case a portion of the flooding was caused by percolation and a portion by flowage upon the surface, and no distinction was made between the two methods of taking.
We think the demurrer should be overruled, and it is so ordered.